IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANDREA L. MARION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 1:24-CV-2582-MLB-JCF |
| HOLLIS COBB ASSOCIATES, INC., | : | |
| | : | |
| | : | |
| Defendant. | : | |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This case is before the Court on the Partial Motion to Dismiss filed by Defendant Hollis Cobb Associates, Inc. ("Hollis Cobb" or "Defendant"). (Doc. 28). For the reasons discussed below, it is **RECOMMENDED** that Hollis Cobb's Partial Motion to Dismiss (Doc. 28) be **GRANTED**.

**Procedural History**[1]

On June 13, 2024, Andrea L. Marion ("Plaintiff"), who is proceeding *pro se*, filed a Complaint against Hollis Cobb. (Docs. 1, 3). Plaintiff applied for leave to proceed *in forma pauperis*, (Doc. 1), which the Court reviewed pursuant to 28 U.S.C. § 1915 and granted. (Doc. 2). The Court did not find that Plaintiff's action was frivolous or malicious. (*Id.* at 3). Nor did the Court find that the Complaint could withstand a motion to dismiss, including for failure to state a claim. (*Id.* at 4).

---

[1] References to docket materials will be made to the Court's CM-ECF pagination.

1

Defendant filed an unopposed Motion for an Extension of Time to file an answer, which the Court granted on September 11, 2024. (Docs. 9, 10). Defendant then filed its answer on September 23, 2024. (Doc. 11). Plaintiff then filed a Motion for Leave to file an Amended Complaint, with the Amended Complaint attached, on October 28, 2024, which the Court granted on December 12, 2024. (Docs. 20, 27). On December 23, 2024, Hollis Cobb filed a Partial Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). (Doc. 28). On January 14, 2025, Plaintiff filed her response in opposition to Defendant's Partial Motion to Dismiss along with a Motion for Leave to file her untimely response, which the Court granted. (Docs. 29, 30). Concurrent with the filing of her response and motion for leave, Plaintiff filed a motion to stay discovery pending the Court's ruling on Defendant's Motion to Dismiss. (Doc. 31). The Court granted that motion, too. (Doc. 32). On January 28, 2025, Defendant filed its reply brief in support of its Partial Motion to Dismiss. (Doc. 33). With briefing complete, the undersigned turns to the merits.

## Plaintiff's Allegations In Complaint[2]

Plaintiff alleges that Defendant began contacting her on January 25, 2024 regarding an alleged debt related to Grady Hospital. (Doc. 20-2 at ¶ 17). Plaintiff

---

[2] For purposes of this Report and Recommendation, the Court only addresses Plaintiff's IIED and Invasion of Privacy claims since Defendant moves to dismiss only those claims. (*See generally* Doc. 28-1).

alleges that Defendant again contacted her in an effort to collect on the alleged Grady Hospital debt on February 5, February 27, and March 7, 2024 via text message. (*Id.* at ¶¶ 18-21, 26, 30). Plaintiff alleges that she received phone calls from Defendant in an effort to collect on the alleged Grady Hospital debt on February 19, February 27, and February 28, 2024. (*Id.* at ¶¶ 22, 24, 28). It appears from Plaintiff's Complaint that all messages sent by Defendant to Plaintiff included information identifying Defendant as a debt collector and stating that the communication was made in an effort to collect a debt. (*See id.* at ¶¶ 19, 23, 25, 29). Plaintiff alleges that in response to Defendant's February 27 text message, she stated that she "declined to pay the debt." (*Id.* at ¶ 27). In response to Defendant's March 7, 2024 text message to Plaintiff, Plaintiff stated that the texts "were giving her a headache and that she was at work with these headaches now." (*Id.* at ¶ 31). Plaintiff also reiterated in that response that she was "unwilling to pay the debt." (*Id.*). Plaintiff mailed to Defendant in March of 2024 a "Pre-Litigation Settlement Demand Notice." (*Id.* at ¶ 33). Plaintiff alleges that Defendant received this notice on or about April 13, 2024. (*Id.* at ¶ 34). Defendant did not respond to Plaintiff's Demand Notice. (*Id.* at ¶ 35). Plaintiff alleges that in response to Defendant's actions, she has suffered and continues to suffer from "stress, aggravation, emotional distress and mental anguish." (*Id.* at ¶ 38).

Plaintiff alleges two causes of action relevant to Defendant's Partial Motion to Dismiss. First, she alleges a claim for Intentional Infliction of Emotional Distress

3

("IIED") under Georgia common law. (*Id.* at ¶¶ 67-71). Second, she alleges a claim for Invasion of Privacy, which she alternatively refers to as Intrusion Upon Seclusion—also purportedly based on Georgia common law. (*Id.* at ¶¶ 72-76). In support of her IIED claim, Plaintiff alleges that "Defendant's conduct was extreme and outrageous," that it was "beyond the bounds of decency tolerated by society," and that Defendant's "repeated and harassing communications" were "intended to cause or were done with reckless disregard for the likelihood of causing severe emotional distress." (*Id.* at ¶ 68). Plaintiff alleges that as a result of Defendant's conduct, she "has suffered severe emotional distress, including anxiety, stress, and disruption of daily life." (*Id.* at ¶ 69). Plaintiff finally cites two cases from Georgia state courts in support of her IIED claim. (*Id.* at ¶¶ 70-71). In support of her Invasion of Privacy claim, Plaintiff alleges that "Defendant's repeated and harassing communications constituted an invasion of Plaintiff's privacy, specifically intrusion upon seclusion. Defendant's actions were unreasonable and highly offensive, as they disregarded Plaintiff's explicit request to cease contact." (*Id.* at ¶ 73). As a direct result of Defendant's conduct, Plaintiff alleges that she has "suffered harm, including emotional distress and anxiety." (*Id.* at ¶ 74). Plaintiff concludes by citing two Georgia state court cases in support of her Invasion of Privacy Claim. (*Id.* at ¶¶ 75-76).

## Discussion

Hollis Cobb argues that Plaintiff's IIED and Invasion of Privacy claims should

be dismissed for failure to state a claim. (Doc. 28-1 at 4-7).

I.  **Applicable Pleading Standards**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations

omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)). The Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Additionally, because Plaintiff [is] acting pro se, [her] 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' " *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 WL 763121, at *1 (N.D. Ga. Mar. 7, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' " *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010)).

## II. Plaintiff's IIED Claim

Defendant contends that its conduct was "neither extreme nor outrageous." (Doc. 28-1 at 5). More specifically, Defendant contends that transmitting just one text message and leaving one voicemail after Plaintiff told Defendant that she refused to pay the debt does not rise to the level of extreme and outrageous conduct required to state an IIED claim. (*Id.*). Citing case law, Defendant contends that a

6

debt collector's conduct "must be egregious." (*Id.*). In response, Plaintiff contends that the alleged conduct of Defendant was extreme and outrageous. (Doc. 29 at 2). She then lists Defendant's actions, which include using an "autodialer to call Plaintiff on February 28, 2024, after receiving [Plaintiff's] refusal to pay," failing to notify Plaintiff of the existence of any alleged account, and "[p]ersistently contacting Plaintiff in violation of federal law, including the FDCPA and TCPA." (Doc. 29 at 2-3). Plaintiff then cites case law that she contends supports her assertion that Defendant engaged in extreme and outrageous conduct. (*Id.* at 3). Plaintiff lastly argues that Defendant's reliance on various case law "is misplaced." (*Id.* at 4). In reply, Defendant reiterates that the behavior complained of by Plaintiff does not rise to the level required to establish extreme and outrageous conduct in support of an IIED claim. (Doc. 33 at 2-3).

To state a claim for intentional infliction of emotional distress in Georgia, a plaintiff must establish that (1) a defendant acted intentionally or recklessly; (2) a defendant's conduct was extreme and outrageous; (3) the plaintiff suffered emotional distress as a result of the defendant's conduct; and (4) the emotional distress that the plaintiff experienced was severe. *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 205 (2015). As to the second element, which Defendant contends Plaintiff has failed to plead, "[e]xtreme and outrageous conduct is that which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

7

civilized community." *Jefferson v. Houston Hosps., Inc.*, 336 Ga. App. 478, 484 (2016) (quoting *Abdul-Malik v. AirTran Airways*, 297 Ga. App. 852, 855-856(1) (2009)).

Plaintiff squarely fails to plead extreme and outrageous conduct. "A creditor's conduct in collecting a debt might be considered extreme and outrageous if it was threatening or physically intimidating." *Wilkerson v. Mason*, No. 1:19-CV-01317-SCJ-WEJ, 2019 WL 5549266, at *5 (N.D. Ga. Aug. 19, 2019) (citing *Latimore v. Gateway Retrieval, LLC*, No. 1:12-CV-00286-TWT-JFK, 2013 WL 791258, at *7 (N.D. Ga. Feb. 1, 2013)). A review of state-level cases reveals that a claim for IIED by a debtor against a creditor in connection with debt collection may lie were the creditor to terrorize a plaintiff at gunpoint, threaten a small child with arrest while trying to gain entry into a residence, or physically intimidate a plaintiff as they were attempting to bury a family member. *See Am. Fin. & Loan Corp. v. Coots*, 105 Ga. App. 849 (1962); *Delta Fin. Co. v. Ganakas*, 93 Ga. App. 297 (1956); *Stephens v. Waits*, 53 Ga. App. 44 (1936). What Plaintiff has alleged in support of her IIED claim falls well short of the sample conduct above. Plaintiff alleges that Defendant engaged in "repeated and harassing communications." (Doc. 20-2 at ¶ 68). But she appears to specifically allege a total of just eight communications from Defendant to her. (*Id.* at ¶¶ 17-31). And she alleges just two messages from Defendant to her after she communicated to Defendant that she "declined to pay the debt." (*Id.* at ¶¶

8

27-28, 30). This is far from the threats or physical intimidation that suffice for IIED claims in the debt collection context.

Plaintiff cites two cases in support of her position that she has pled extreme and outrageous conduct. First, she cites *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507 (9th Cir. 1994). Then, she cites a case named "Ingram v. Mutual of Omaha Ins. Co." at 170 Ga. App. 679. (Doc. 29 at 3). One of the problems with *Fox*, as Defendant points out, is that it does not deal with an IIED claim. (Doc. 33 at 3). Instead, *Fox* is a Ninth Circuit case dealing with the Fair Debt Collection Practices Act. *See generally Fox*, 15 F.3d 1507. *Fox* does not discuss in depth at any point Georgia law or IIED and is therefore inapplicable here. *Id.* And the problem with *Ingram*, as Defendant also points out, is that the case does not exist—at least as far as the Court can tell. (Doc. 33 at 3-4). Defendant later appears to cite *Mckenzie v. Allconnect, Inc.*, 369 F.Supp.3d 810, 817 (E.D. Ky. 2019) in support of her claim that unauthorized autodialed calls can elevate conduct to "extreme and outrageous levels." (Doc. 29 at 4). But as Defendant again rightly points out, *McKenzie* does not involve IIED under Georgia law and is therefore inapplicable. (Doc. 33 at 4); *see also McKenzie*, 369 F.Supp.3d at 810. The elements for an intrusion upon seclusion claim under Kentucky and Utah law, which *McKenzie* dealt with, are quite different than the elements that Georgia law requires.

9

In sum, Plaintiff has failed to plead facts that establish extreme and outrageous conduct. As a result, it is **RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's IIED claim be **GRANTED**.

### III. <u>Plaintiff's Invasion of Privacy Claim</u>

Defendant contends that the same conduct Plaintiff complains of in connection with her IIED claim—the one text message and one phone call that occurred after Plaintiff told Defendant that she would not pay the alleged debt—"does not invade one's privacy." (Doc. 28-1 at 6). Citing precedent from this Court, Defendant argues that the conduct complained of by Plaintiff here does not rise to the level required to state a claim for invasion of privacy based on an intrusion upon seclusion. (*Id.* at 6-7) (citing *Ferguson v. Innovate Loan Servicing Corp.*, No. 1:18-CV-3071-ELR-LTW, 2019 WL 4804272, at *2 (N.D. Ga. Aug. 7, 2019)). More specifically, Defendant contends that an invasion of privacy claim must involve, at least to some extent, a physical intrusion. (*Id.*). In response, Plaintiff contends that "Defendant's repeated communications, including autodialed calls and text messages, constitute an intentional intrusion upon Plaintiff's privacy." (Doc. 29 at 4). She further contends that "Courts have upheld invasion of privacy claims in similar circumstances." (*Id.*) (citing *McKenzie*, 369 F.Supp.3d 810). In reply, Defendant reiterates its position that an invasion of privacy claim requires physical trespass or surveillance and distinguishes from the instant case those cases which Plaintiff cited in response to its Partial Motion to Dismiss. (Doc. 33 at 5-6).

10

Like her IIED claim, Plaintiff squarely fails to allege facts sufficient to establish a claim for invasion of privacy under an intrusion upon seclusion theory. Defendant is correct that, in Georgia, a claim based on the intrusion upon seclusion theory requires a plaintiff to demonstrate that they were "subjected to physical intrusion analogous to a trespass." *See, e.g., Herzler v. Herzler*, 368 Ga. App. 624, 628 (2023) (quoting *Assn. Servs., Inc. v. Smith*, 249 Ga. App. 629, 632(2) (2001)) (internal quotations omitted); *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 136 (2011) ("we have adhered to the requirement of a 'physical intrusion,' but with the understanding 'that this "physical" requirement can be met by showing that the defendant conducted surveillance on plaintiff or otherwise monitored her activities.'") (quoting *Anderson v. Mergenhagen*, 283 Ga. App. 546, 550(2) (2007)). Plaintiff here has alleged nothing more than potentially bothersome messages—via text and via phone call—from a debt collector. As Defendant rightly points out, such conduct has in other cases fallen short of what is required to state an invasion of privacy claim based on intrusion upon seclusion. *See Benedict*, 309 Ga. App. at 136 (holding that repeated calls to plaintiff's telephone, while seemingly to harass, bother, and annoy plaintiff, amounts to a mere annoyance or disturbance of the peace and not an actionable invasion of privacy claim); *see also Ferguson*, 2019 WL 4804272, at *2 (finding that continuous harassment in the form of phone calls in an attempt to collect a debt was insufficient to state a claim for intrusion upon seclusion under Georgia law).

11

Because Plaintiff has not alleged facts sufficient to state a claim for invasion of privacy under an intrusion upon seclusion theory, it is **RECOMMENDED** that Defendant's Motion to Dismiss Plaintiff's invasion of privacy claim be **GRANTED**.

### IV.  Plaintiff's Citation to "Ingram v. Mutual of Omaha Ins. Co."

As noted earlier, Plaintiff cites in her response brief to the case "*Ingram v. Mutual of Omaha Ins. Co.*, 170 Ga. App. 679, 681 (1984)." (Doc. 29 at 3). Neither the undersigned nor Defendant can find this case. (Doc. 33 at 3). In fact, a different case appears at 170 Ga. App. 679. That case, *Whitlock v. State*, was decided in 1984 just like this "Ingram" case that Plaintiff cites to. But the *Whitlock* case has essentially nothing to do with IIED, invasion of privacy, or any other issue now before the Court.

Given the rise of artificial intelligence and its use in court proceedings, courts have begun ordering litigants suspected of citing to AI-hallucinated cases to show cause why sanctions or discipline should not issue. *See, e.g, Mata v. Avianca, Inc.*, No. 22-CV-1461 (PKC), 2023 WL 3696209 (S.D.N.Y. May 4, 2023); *United States v. Hayes*, No. 2:24-CR-0280-DJC, 2024 WL 5125812 (E.D. Cal. Dec. 16, 2024). Specifically, courts tend to find that FED. R. CIV. P. 11(b)(2) applies in the context of litigants citing to AI-hallucinated cases in documents submitted to courts. Plaintiff is subject to FED. R. CIV. P. 11 notwithstanding her status as a *pro se* plaintiff. *See, e.g., Harris v. Heinrich*, 919 F.2d 1515, 1516 (11th Cir. 1990) ("Rule 11 applies to *pro se* plaintiffs"). As a result, she must comply with Rule 11's requirements.

Plaintiff is **ORDERED** to provide a true and accurate copy of the "*Ingram v. Mutual of Omaha Ins. Co.*, 170 Ga. App. 679 (1984)" case that she cites in her response in opposition to Defendant's Partial Motion to Dismiss to the Court by **February 26, 2025**. Plaintiff may provide a true and accurate copy of that case to the Court by filing it with the Clerk in the same manner she has filed other papers. If she is unable to provide to the court a true and accurate copy of the "*Ingram v. Mutual of Omaha Ins. Co.*, 170 Ga. App. 679 (1984)" case, Plaintiff is **ORDERED** to separately show cause in writing as to why she should not be sanctioned pursuant to FED. R. CIV. P. 11. *See, e.g., Al-Hamim v. Star Hearthstone, LLC*, No. 24CA0190, 2024 WL 5230126, at *5 (Colo. App. Dec. 26, 2024) (explaining how it ordered the *pro se* plaintiff to provide complete and unedited copies of cases or, in the alternative, to show cause why he should not be sanctioned for citing fake cases).

## Conclusion

It is **RECOMMENDED** that Hollis Cobb's Partial Motion To Dismiss Plaintiff's Intentional Infliction of Emotional Distress and Invasion of Privacy claims (Doc. 28) be **GRANTED**.

It is **ORDERED** that Plaintiff file with the Court by February 26, 2025 either a true and accurate copy of the "*Ingram v. Mutual of Omaha Ins. Co.*, 170 Ga. App. 679 (1984)" case that she cites in her response in opposition to Defendant's Partial Motion to Dismiss or, in the alternative, a separate writing explaining why she should not be sanctioned pursuant to FED. R. CIV. P. 11.

**IT IS SO ORDERED AND RECOMMENDED** this 14th day of February, 2025.

*/s/ J. Clay Fuller*
J. CLAY FULLER
UNITED STATES MAGISTRATE JUDGE